

FILED
SEP 1 7 2019
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
      DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § § § § § § § | **INDICTMENT** A19CR 200 RP <br><br> [COUNT 1: 18 U.S.C. § 1956, Conspiracy to Commit Money Laundering; <br> COUNTS 2-3: 18 U.S.C. § 1028A and 2, Aiding and Abetting Aggravated Identify Theft] |
| v. | | |
| OLUMIDE BANKOLE MORAKINYO | | |

THE GRAND JURY CHARGES:

At All Times Material To This Indictment:

## FRAUD

1. The Defendant, OLUMIDE BANKOLE MORAKINYO, who resided primarily in Canada, hired others in the United States to receive fraudulent funds derived from, among others, a scheme to defraud the Employees Retirement System of Texas ("ERS") and a scheme to defraud the Internal Revenue Service ("IRS") through fraudulent tax return filings.

2. Beginning in June of 2017, persons unknown to the Grand Jury created unauthorized accounts for Texas retirees in the ERS internet portal. The unknown persons accessed the ERS participant internet portal using interstate wires and used ERS participants' personally identifiable information ("PII") to create 30 accounts for ERS participants, 29 of whom were over the age of 60. These ERS participants did not previously have accounts in the ERS internet portal and did not give permission to the unknown persons to create the accounts. After creating the accounts, the unknown persons changed the bank accounts on file with ERS for 26 of the 30 participants' retirement payments, directing ERS to deposit retirement payments to bank accounts controlled by the unknown persons or their coconspirators. ERS, based in

Austin, Texas, in the Western District of Texas, detected the fraudulent activity, but not before ERS sustained an actual loss of $10,605.18 with a potential loss estimated at $131,461.64.

3. Stolen Identity Refund Fraud ("SIRF") occurs when a fraudulent claim (or attempted claim) for a tax refund or tax return is filed with the IRS and the fraudulent claim is in the name of a person whose PII has been stolen or unlawfully used to make the claim. The tax return is intended to benefit someone other than the person to whom the PII belongs. The tax return can be filed via interstate wires on the internet.

4. Beginning in May of 2017, persons unknown to the Grand Jury made in excess of $4,000,000 in fraudulent SIRF claims to the IRS using interstate wires and directed the IRS to deposit the refunds into bank accounts controlled by the unknown persons or their coconspirators. These bank accounts were opened by activating prepaid cards with victim PII. One of the methods the unknown persons used to acquire the PII of victims was by stealing PII from an accounting firm located in Georgetown, Texas, in the Western District of Texas.

5. These fraud schemes used interstate wires in violation of the Wire Fraud statute, Title 18, United States Code, Section 1343, and used multiple people working together to perpetrate them in violation of the Fraud Conspiracy statute, Title 18, United States Code, Section 1349.

## MONEY LAUNDERING CONSPIRACY

6. The wire fraud conspiracies described above used a "catcher" to receive the fraudulently derived funds. The "catcher" must be based in the United States and have the ability to access a U.S. bank account to receive the funds from the victims.

7. OLUMIDE BANKOLE MORAKINYO operated a money laundering conspiracy to conceal the nature, location, source, ownership, and control of the fraud proceeds for multiple

fraud schemes, including both the Texas ERS scheme and the SIRF scheme. One of the individuals hired by OLUMIDE BANKOLE MORAKINYO to act as a "catcher" and launder the fraudulent proceeds was Lukman Aminu. Aminu, who resided in New Hampshire, was previously indicted in the Western District of Texas in case number 1:18CR00328.

8.   OLUMIDE BANKOLE MORAKINYO's primary means of "catching" the funds was by utilizing prepaid cards. A reloadable prepaid card may be activated with a victim's PII, which opens a bank account in that victim's PII, enabling deposits and wire transfers to that account. The account can be accessed using the same prepaid card. Prepaid card companies utilized by OLUMIDE BANKOLE MORAKINYO in this way included those issued by Green Dot and Netspend. Aminu would purchase prepaid cards in the United States and then use interstate wires to electronically transmit the card numbers and activation codes to OLUMIDE BANKOLE MORAKINYO. OLUMIDE BANKOLE MORAKINYO, in turn, was working with others who would activate the cards with victim PII.

9.   For example, OLUMIDE BANKOLE MORAKINYO directly assisted the persons making the in excess of $4,000,000 in fraudulent SIRF claims described above by providing them with numerous prepaid cards activated as bank accounts with victim PII. Those bank accounts were submitted with the fraudulent tax refund filing to receive the SIRF funds. OLUMIDE BANKOLE MORAKINYO acquired a large number of those prepaid cards from Aminu. Approximately $254,844 in requested SIRF tax refunds was associated with prepaid cards sent from Aminu to OLUMIDE BANKOLE MORAKINYO.

10.   Once the funds derived from wire fraud were sent to the bank account associated with the prepaid cards in Aminu's possession, OLUMIDE BANKOLE MORAKINYO would inform Aminu. OLUMIDE BANKOLE MORAKINYO communicated with Aminu using

interstate wires, including by phone communications and the cell phone messaging application WhatsApp. OLUMIDE BANKOLE MORAKINYO was listed in Aminu's phone contacts as "Olu Cana" (short for "Olumide Canada").

11. After getting his instructions from OLUMIDE BANKOLE MORAKINYO, Aminu would use the cards at locations in the United States to quickly withdraw the funds from the accounts by purchasing money orders and withdrawing cash. OLUMIDE BANKOLE MORAKINYO would then relay additional instructions to Aminu to conduct additional financial transactions, including by sending money, depositing money orders into bank accounts, and purchasing automobiles to be shipped to Nigeria. OLUMIDE BANKOLE MORAKINYO also purchased automobiles in Canada, and shipped them to Nigeria.

12. Used car markets in Nigeria are commonly used to launder funds of criminal organizations, specifically individuals that commit fraud in the United States. There is a large market for used vehicles in Nigeria that are purchased at auto auction sites in the United States every year using criminal proceeds. The vehicles are then shipped to Nigeria. The vehicles are then fixed and resold.

## MANNER AND MEANS

13. Multiple acts in furtherance of the money laundering conspiracy were committed by MORAKINYO, Aminu, and persons known and unknown to the Grand Jury, including, but not limited to, the following:

   a. On or about May 1, 2017, Aminu sent a WhatsApp message to MORAKINYO with nine Green Dot card numbers, including one with 7971 as the last four digits.

b. On or about May 8, 2017, the Green Dot card ending in 7971 was activated and registered using the name and PII of Victim M.M., a Georgetown, Texas resident and a client of the accounting firm referenced above.

c. On or about May 16, 2017, MORAKINYO sent Aminu a WhatsApp message that read "017971 abere 2131 amt 8160." The last six digits of the Green Dot card activated in ~~Victm-1~~ Victim M.M.'s PII was 017971. If activated as a bank card, the Green Dot card would require a 4-digit personal identification number (PIN) to access the account (for example, the "2131" number). [MCG]

d. Victim M.M. was owed an additional $330 by the IRS from a previous tax filing. So, on or about May 17, 2017, Victim M.M.'s tax refund for $8,160 plus ~~$330~~ $330 was sent by the IRS to the account associated with the Green Dot card ending in 7971, for a total of $8,490. [MCG]

e. On or about May 17, 2017, the Green Dot card ending in 7971 was used by Aminu at a Hannaford Supermarket in Manchester, New Hampshire, to make an approximately $2,997 transaction.

f. On or about May 18, 2017, the Green Dot card ending in 7971 was used by Aminu at a Hannaford Supermarket in Manchester, New Hampshire, to make an approximately $2,996 transaction.

g. Between May 17, 2017 and May 19, 2017, multiple WhatsApp messages between Aminu and MORAKINYO discuss the distribution of the proceeds from the transactions made by Aminu using the Green Dot card ending in 7971.

h. On or about June 9, 2017, MORAKINYO, using WhatsApp, sent a picture of a credit card in the name of Victim K.D. to Aminu. In excess of approximately

5

$12,200 in charges were made on the card in the greater Toronto, Canada area. The card was applied for with the stolen PII of Victim K.D.

i. On or about June 11, 2017, Aminu sent a WhatsApp message to MORAKINYO with multiple un-activated Green Dot card numbers, including one ending in 1656.

j. On or about June 27, 2017, a person unknown to the Grand Jury activated the Green Dot card ending in 1656 using Victim C.A.'s PII. Victim C.A. is over 80 years old and had no knowledge of the Green Dot card. Victim C.A.'s own monthly retirement payment from Prudential Financial was fraudulently redirected from Victim C.A.'s actual bank account to the Green Dot card ending in 1656. On or about July 31, 2017, a $1,561.22 payment meant for Victim C.A. was sent from Prudential to the Green Dot card ending in 1656.

k. On or about July 31, 2017, a person unknown to the Grand Jury created an ERS account for Victim B.B. through the ERS internet portal using Victim B.B.'s PII. Victim B.B. did not give permission for this account to be created. The person unknown to the Grand Jury then successfully changed the bank account on file with ERS for Victim B.B. to the account associated with the Green Dot card ending in 1656.

l. On or about August 1, 2017, the day after Victim C.A.'s $1,561.22 Prudential Fiancial payment was deposited to the account, Aminu utilized the Green Dot card ending in 1656 at a Walmart in New Hampshire to purchase a $1,000 MoneyGram money order payable to "Lukman Aminu" and a $550 MoneyGram money order that was made payable to an auto auction business.

m. On or about August 29, 2017, Victim B.B.'s monthly retirement payment of $1,972.97 was deposited onto the Green Dot card ending in 1656.

n. On or about August 30, 2017, MORAKINYO sent a WhatsApp message to Aminu that read "1656 abere 8532 elo 1972." 1656 are the last four digits of the Green Dot card used to receive Victim B.B.'s ERS retirement payments and "1972" coincides with the $1,972 payment amount. As noted above, each card required a 4-digit PIN to access the account, which would explain the 8532 number.

o. On or about August 30, 2017, Aminu used the Green Dot card ending in 1656 at a Hannaford Supermarket in Manchester, New Hampshire, to make a purchase of $1,904. Aminu purchased four Western Union money orders and withdrew $200 in cash.

p. On or about September 27, 2017, Victim B.B.'s monthly retirement payment of $1,972.97 was again deposited onto the Green Dot card ending in 1656.

q. On or about September 28, 2017, Aminu used the Green Dot card ending in 1656 at a Hannaford Supermarket to purchase five Western Union money orders for a total of $1,905.00. Two of the Western Union money orders were made out to "Lukman Aminu" while others went to automobile auction businesses.

## COUNT ONE
### Conspiracy to Commit Money Laundering
### [18 U.S.C. § 1956(h)]

14. Count One incorporates by reference, as if fully set forth herein, paragraphs one through thirteen of this Indictment.

15. Beginning sometime in or about March of 2016, the exact date being unknown, and continuing until on or about August 30, 2019, in the Western District of Texas, District of New Hampshire, Canada, and elsewhere, the Defendant,

**OLUMIDE BANKOLE MORAKINYO,**

did knowingly combine, conspire, and agree with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, namely:

a. To knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud and conspiracy to commit fraud as described in this Indictment, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

b. To knowingly transport, transmit, transfer and attempt to transport, transmit, transfer funds and monetary instruments, from a place in the United States to a place outside the United States, knowing that the funds and monetary instruments involved in the transportation, transmittal, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmittal, and transfer was designed in whole or in part to conceal and disguise the nature, location, source,

ownership, and control of the proceeds of specified unlawful activity, that is, wire fraud and conspiracy to commit fraud as described in this Indictment, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT TWO
### Aggravated Identity Theft
### [18 U.S.C. § 1028A and 2]

16.    Count Two incorporates by reference, as if fully set forth herein, paragraphs one through thirteen of this Indictment.

17.    Between on or about June 1, 2017 and on or about September 28, 2017, in the Western District of Texas and the District of New Hampshire, and elsewhere, the Defendant,

**OLUMIDE BANKOLE MORAKINYO,**

did knowingly transfer, possess, and use, and aid, abet, induce, and procure the transfer, possession, and use of, without lawful authority, a means of identification of another person, to wit, a card connected to a bank account in the name of Victim B.B. during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), namely wire fraud and wire fraud conspiracy, as described in this indictment, related to Texas ERS, knowing that the means of identification belonged to another actual person.

All in violation of Title 18, United States Code, Section 1028A(a)(1) and 2.

## COUNT THREE
### Aggravated Identity Theft
### [18 U.S.C. § 1028A and 2]

18. Count Three incorporates by reference, as if fully set forth herein, paragraphs one through thirteen of this Indictment.

19. Between on or about May 1, 2017 and on or about October 15, 2017, in the Western District of Texas and the District of New Hampshire, and elsewhere, the Defendant,

**OLUMIDE BANKOLE MORAKINYO,**

did knowingly transfer, possess, and use, and aid, abet, induce, and procure the transfer, possession, and use of, without lawful authority, a means of identification of another person, to wit, a card connected to a bank account in the name of Victim M.M., described above, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), namely wire fraud and wire fraud conspiracy, as described in this indictment, related to SIRF tax fraud as described above, knowing that the means of identification belonged to another actual person.

All in violation of Title 18, United States Code, Section 1028A(a)(1) and 2.

A TRUE BILL

**ORIGINAL SIGNATURE
REDACTED PURSUANT TO
E-GOVERNMENT ACT OF 2002**

JOHN F. BASH
United States Attorney

By: _____
MICHAEL C. GALDO
NEERAJ GUPTA
Assistant United States Attorney